### THE CASTLEWOOD.

### NEWPORT NEWS IRON WORKS, Inc., v. UNITED STATES et al.

(District Court, E. D. Pennsylvania. April 10, 1924.)

#### No. 55 of 1922.

1. **Maritime liens** ⬯➡30.—**Repairer held not entitled to lien.**

An inquiry of the agent, ordering repairs for a steamship, as to its ownership, which was not answered, *held* not the exercise of such reasonable diligence as to entitle the repairer to a lien, under Ship Mortgage Act 1920, § 30, subsec. R (Comp. St. Ann. Supp. 1923, § 8146¼pp), where by the terms of the ship's charter the charterer was without authority to bind the vessel.

⬯➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Account stated** ⬤═5**—Claim admitted subject to audit, when audited, held "account stated."**

A voucher issued by the Emergency Fleet Corporation in part payment of an account for repairs, which admitted liability for the claim subject to audit and promised to pay it when audited, *held* to make the claim as audited an "account stated."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Account Stated.]

**3. Admiralty** ⬤═10**—Maritime contract not rendered nonmaritime by stating account.**

A maritime contract is not changed into a nonmaritime contract by an account stated.

In Admiralty. Suit by the Newport News Iron Works, Inc., against the United States and others, as owners of the American steamship Castlewood. Decree for libelant.

Joseph W. Henderson, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., and Joseph L. Kun, Asst. U. S. Atty., both of Philadelphia, Pa., Frank R. Conway, of Washington, D. C., and Paul W. Knox, of Philadelphia, Pa., for defendants.

THOMPSON, District Judge. This suit was brought under the terms of the Suits in Admiralty Act of March 9, 1920 (Comp. St. Ann. Supp. 1923, §§ 1251¼–1251¼*l*), to recover the sum of $3,008.-65, a balance of an account for repairs performed by the libelant to the steamship Castlewood at Newport News, Va., in November, 1920. The libel contains two counts. Under the first, the libelant elects to proceed in rem, as if the vessel were privately owned, without prejudice to its right to proceed in personam, and, in the second, it proceeds in personam against the United States Shipping Board Emergency Fleet Corporation, as upon an account stated.

[1] The libelant, under its first count, claims a lien under the following circumstances: The Castlewood was owned by the Emergency Fleet Corporation and was being operated under charter to the Castlewood Steamship Company by its receiver, appointed by the District Court for the Southern District of New York. The Castlewood Steamship Company had, as its shipping agent at Norfolk, Robert Hasler & Co. The vessel being in urgent need of repairs, the libelant made the repairs on the order of Mr. Anderson, the port engineer for the Hasler Company, through arrangements made by him with Mr. Gillen, manager and vice president of the libelant corporation. It appears that Gillen relied upon the fact that Hasler & Co. were well-known steamship agents; that he called at Hasler & Co.'s office, was presented with the list of repairs, and was told that the work was needed without delay. Mr. Gillen testified:

"In a casual way I said, 'Mr. Anderson, whose ship is this?' He said, 'We are agents for the ship, and we are in a great hurry.' I said, 'Have you any further papers on it?' He said, 'To avoid time we are using the list made out by the engineer.'"

That was the only inquiry made by any one, so far as the evidence shows, to ascertain what authority Hasler & Co. had to impose a lien upon the vessel. The charter party contained clauses substantially

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

identical with those under consideration by the Supreme Court in United States v. Baker et al. (The Clio) 260 U. S. 482, 43 Sup. Ct. 181, 67 L. Ed. 361. Under the authority of that case, the libelant's manager did not exercise the reasonable diligence required by the Act of June 23, 1910 (Comp. St. §§ 7783–7787), and the Ship Mortgage Act, section 30 of the Merchant Marine Act 1920 (Comp. St. Ann. Supp. 1923, § 8146¼pp), and no lien would have been acquired if the vessel had been privately owned.

[2] The following facts were developed in support of the second count:

Mr. Bridges, secretary and treasurer of the libelant company, being unable to get payment through Hasler & Co., went to the office of the Emergency Fleet Corporation and presented an itemized statement of the repairs, labor, and materials furnished, and upon a statement of the facts was informed by the general counsel of the Emergency Fleet Corporation that the libelant had an admiralty claim against the Shipping Board, and that he could go to the controller's office, and that he would give him some settlement. As a result of further conference, Mr. Bridges received for the libelant from the Emergency Fleet Corporation a voucher for $6,000 as an advance on account of the bill for repairs ordered by Hasler & Co. in the amount of $8,491.70.

The voucher is upon the form of the United States Shipping Board Emergency Fleet Corporation, Division of Operations. It contains the following matter pertinent to the claim:

"Debtor to Newport News Iron Works, Inc., Newport News, Va.

"Date, June 10, 1921.

"Seller's Invoice No. 742, November 16, 1920. For use on Contract No. Rq. November 23, 1920. F. O. B. Hasler & Company, Inc. S. S. Castlewood.

"For an advance on account of repairs to the Castlewood (5141 D. W. T.) for work performed at Newport News in accordance with invoice of Nov. 16, 1920, bill No. 742, in the amount of $8,491.70, bill now in the course of audit by the Norfolk office and final settlement will be made by the New York office on completion of audit.

"Repairs ordered by Hasler & Co., Inc., in accordance with confirming requisition dated November 23, 1920, on authorization from the receiver, Victor S. Fox & Co.

"Vessel returned to the Board as per memorandum of the assistant counsel dated June 8, 1921, $6,000.00, attached.

"Approved:                                  W. W. Nottingham, Assistant Counsel.

"Maritime lien.                            G. R. Snider, Adm. Counsel.

"I certify that the above claim constitutes a maritime lien and is payable by the Shipping Board.            Edward M. Hyzer, General Counsel.

"I certify that the above is true and correct.

"C. P. Stone, for Acting Director of Operations.

"Audit reviewed and voucher certified for payment.

"J. P. Brantley, Auditor Misc. General Expense Branch.

"Approved for $6,000.00.

"M. Newbold,

"Auditor, Bureau of General Auditing for the General Comptroller."

The Emergency Fleet Corporation paid the libelant by check the said sum of $6,000, and in accordance with the terms of the voucher the Emergency Fleet Corporation caused the bill to be audited, and upon audit its amount was increased to $9,008.65, which was certified to be correct.

The libelant relies upon the voucher as an account stated, constituting a cause of action, and claims a balance of $3,008.65, being the amount shown upon the audit, $9,008.65, less $6,000 paid. The respondent denies liability upon the ground that the voucher was issued under mistake of law and fact. It has not offered any proof as to the alleged mistake of fact, but in support of the alleged mistake of law relies upon the generally accepted construction of the act of 1910 by the courts prior to the decision in the Clio Case. It further contends that no cause of action lies in admiralty upon an account stated, as the action is not based upon a maritime contract, but upon an implied promise to pay, arising after the completion of repairs, which were the subject of a maritime contract, but not out of the maritime contract.

The voucher and the circumstances under which it was prepared, I think, clearly establish it as an account stated. The libelant's bill for repairs was presented to the Emergency Fleet Corporation's office. They received the account, admitted liability subject to audit, and promised to pay it after audit. An audit was made and certified, and balance stated. Thus, in my opinion, it became an account stated. Toland v. Sprague, 12 Pet. 300, 335, 9 L. Ed. 1093; 1 Cyc. 364.

[3] While the defense of mistake of law was pleaded, it was not raised at the argument nor in the briefs, and, as it was apparently abandoned, in view of the general rule that a mistake in law is not available as a defense, it will not be discussed. Moreover, the equities here are against the respondent, because it has received value in the repairs to its vessel. But it is contended that an action based upon an account stated will not lie in admiralty, because the suit is not based upon the maritime contract, but on the implied promise to pay after the completion of the repairs.

The contrary was held by Judge Adams, of the Southern District of New York, in the case of Morse Dry Dock & Repair Co. v. Munson Steamship Line, 155 Fed. 150, which was affirmed by the Circuit Court of Appeals of the Second Circuit in 158 Fed. 1021, 85 C. C. A. 666, and following that case the same court, in an opinion by Judge Manton in the Hattie Thomas, 262 Fed. 943, held that a maritime contract is not changed into a nonmaritime contract because of an account stated.

A decree may be entered for the libelant in the sum of $3,008.65, with interest from June 10, 1921, and costs.